# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOUGLAS ANDREW REDLESKI.**

      **Plaintiff,**

**v.**                                   **Civil Action No. 1:15cv89**
                                                   **(Judge Keeley)**

**MARVIN C. PLUMLEY, Warden,**
**DEBBIE HISSOM, RN, BSN,**
**DAVID PROCTOR, Practicing Physician,**
**TRISTEN TENNY, RN, HSA,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

Douglas Redleski ("Plaintiff"), an inmate incarcerated at the Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia, initiated this *pro se* case on May 27, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. §1983 against the above-named defendants. ECF No. 1. Simultaneously, Plaintiff filed a Motion/Application and Affidavit to proceed without payment of fees ("IFP") with a copy of his Prisoner Trust Account Report and a Consent to Collection. ECF Nos. 2-4. On May 27, 2015, the Magistrate Judge entered a Report and Recommendation, which found that Plaintiff had sufficient funds to pay the $400.00 filing fee and recommended that his request to proceed IFP be denied. ECF No. 9. On May 28, 2015, Plaintiff paid the $400.00 filing fee [ECF No. 11], and on May 29, 2015, the Report and Recommendation was vacated by the Court, and Plaintiff's Motion to Proceed IFP was denied as moot. ECF No13.

On June 1, 2015, the Magistrate Judge conducted a preliminary review of the Complaint and determined that summary dismissal was not warranted, and Defendants should be made to file an answer. Because Plaintiff paid the filing fee and his application

to proceed IFP was denied as moot, he was not entitled to court ordered service of process by the United States Marshall Service. Instead, Plaintiff was notified that he was responsible for obtaining service of process on his own and was advised of the requirements of Rule 4(m) of the Federal Rules of Civil Procedure. More particularly, Plaintiff was advised that because his Complaint was filed on May 21, 2015, Defendants must be served on or before September 18, 2015. An Order to that effect was entered [ECF No. 16], and the Clerk of Court issued a summons for each of the defendants. ECF No. 17.

On June 11, 2015, Plaintiff filed a Certificate of Service which indicated that the four Defendants were served with a Summons and a copy of the Complaint on June 5, 2015, through Certified United States Mail, Return Receipt. ECF No. 21. On June 11, 2015, Plaintiff file a second Certificate of Service in which he specifically noted that the documents for Plumley, Tenney and Proctor were received by Debbie Mich, who was, based on knowledge and belief, designated by the HCC to receive those types of documents for those Defendants. Plaintiff also noted that on information and belief, Hissom initialed the return receipt herself. Plaintiff attached to his Certificate of Service the return receipts.

On June 24, 2015, Plaintiff filed a "Request for a Court Order for Service to be Made by United States Marshal, Deputy Marshal or Person Specially Appointed by the Court. ECF No. 24. Plaintiff acknowledged that after filing his Certificate of Service, he learned that the summonses may not have been properly served. Plaintiff also noted that he clearly did not understand the process of serving a summons. Plaintiff also acknowledged that he erroneously served Defendants by certified mail himself rather

than the Clerk of Court doing so. Accordingly, Plaintiff requested that the Court determine from the record if he had correctly served Defendants, and if not, pursuant to Rule 4(c), he requested an order that service be made by a United States Marshal, deputy marshal or by a person specially appointed by the court.

On June 25, 2015, Hissom and Plumley filed a Motion to Dismiss. ECF No. 25. The motion did not raise improper service as a basis for dismissal. On June 26, 2015, Defendants Hissom and Plumley filed a Supplemental Motion to Dismiss. ECF No. 27. The supplemental motion also did not raise improper service as a basis for dismissal. On July 6, 2015, Plaintiff filed Objections to the Motion to Dismiss. ECF No. 29.[1] On July 20, 2015, Hissom and Plumley filed a Reply. ECF No. 42.[2]

On July 7, 2015, Tenney and Proctor filed a Motion to Dismiss. ECF No. 30. The sole ground raised in support of the motion was insufficiency of service of process.

On July 8, 2015, the Magistrate Judge granted Plaintiff's Motion for a Court Order for Service by the United States Marshal. In granting the Motion, the Magistrate Judge noted that Hissom and Plumley had filed a Motion to Dismiss and a Supplemental Motion to Dismiss, neither of which raised improper service as a defense, and therefore, those Defendants had waived the same. However, Proctor and Tenney, had filed a Motion to Dismiss on the basis of insufficiency of service and had correctly noted that Plaintiff's service by certified mail did not comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Therefore, the Marshal was directed to serve Proctor and

---

[1] It is not entirely clear whether Plaintiff was responding to the original or supplemental Motion to Dismiss.

[2] Plaintiff filed a surreply on July 20, 2015.ECF No. 42. However, pursuant to LR PL P 11.4, surreply and surrebuttal memoranda may not be filed. Accordingly, the undersigned has not considered Plaintiff' surreply to Defendants' Hissom and Plumley.

Tenney at the HCC, provided however, because Plaintiff was not proceeding IFP, he was required to first pay the service fee of $483.15.[3]

On July 14, 2015, Plaintiff filed a Certificate of Service indicating that he had served an original and one copy of a Notice of a Lawsuit and Request to Waive Service of Summons and Waiver of Summons and a copy of the complaint on Tenney and Proctor by mailing the same by certified mail returned receipt on July 13, 2015. ECF No. 39. In addition, on July 15, 2015, Plaintiff filed a Response in Opposition to Tenney's and Proctor's Motion to Dismiss. ECF No. 40. On July 23, 2015, Tenney and Proctor filed a reply. ECF No. 44.[4]

This case is before the undersigned for a Report and Recommendation on Defendants' dispositive motions.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

In his complaint, Plaintiff alleges that he suffers from "uncontrolled diabetic mellitus, which has caused serious medical grief such as diabetic neuropathy with serious visual complications, cataracts, adhesive capsulitis, memory problems, balance problems, gum disease, and autonomic neuropathy." ECF No. 1 Plaintiff further alleges that Proctor, the Physician at HCC, has written numerous orders without first speaking to him to inquire into facts necessary to make a professional judgment into his diabetic condition. In addition, Plaintiff alleges that he was not made

---

[3]The fee was based on a fee of $65/hour for six hours plus $0.575 per mile for a 162 mile round trip from the Clarksburg Office.

[4]On July 29, 2015, Plaintiff filed a surrebuttal. ECF No. 47. However, pursuant to LR PL P 11.4, surreply and surrebuttal memoranda may not be filed. Accordingly, the undersigned has not considered Plaintiff's surrebuttal

aware of any order for a diabetic diet until April 2, 2015, and although a diabetic diet order may have issued on March 28, 2014, he was not made aware of it.

Plaintiff further alleges that Tenney, the Health Service Administrator, determined that he has "uncontrolled diabetes." Despite this determination, Plaintiff maintains that the medical records attached to his complaint clearly show that between March 23, 2010,[5] and June 14, 2014, defendant Proctor, did "absolutely nothing to end the 'uncontrolled diabetes.'" ECF 1 at 9. Plaintiff elaborates on this accusation by noting that Proctor not only has written orders without first speaking with him, he failed to have his blood glucose levels checked after meals or before bedtime. Instead, Plaintiff maintains that the medical unit only monitored his blood glucose levels twice a day at 6:30 a.m. and 4:30 p.m, both of which were before meals. Additionally, Plaintiff alleges that without seeing him, Proctor raised his Lantus insulin dosage on three occasions, and again without seeing him, discontinued the Lantus insulin, and "doggedly persisted in a course of treatment known to be ineffective (NPH insulin) and without any monitoring schedule." ECF No. 1 at 10-11.[6] Plaintiff also alleges that on March 16, 2015, his A1C was checked and found to be 10, which is high. Despite this reading, Plaintiff maintains that Proctor decreased his insulin from 35 to 30 units NPH., without seeing him and without ordering a monitoring schedule. Plaintiff also alleges that on March 17, 2015, after five (5) years of high A1C tests, Proctor ordered a monitoring schedule of four times a day for thirty days. However, when progress started to show, Proctor discontinued

---

[5]Exhibits attached to the complaint indicate that Plaintiff arrived at HCC on January 15, 2010. ECF No. 1-2 at 43.

[6]It would appear that are several types of insulin that can be prescribed for the treatment of diabetes. Each type of insulin has an onset, a peak and a duration time. The onset is how soon the insulin starts to lower blood glucose after it is taken. The peak is the time the insulin is working the hardest to lower blood glucose. The duration is how long the insulin lasts, i.e., the time it keeps lowering blood glucose. Lantus is a long-acting insulin which has an onset of one hour, is peakless, and has a duration of 10-16 hours. The NPH prescribed to Plaintiff are Novalin N and Novalin R. ECF No. 1-1 at 50. Novolin N is an intermediate-acting insulin and has an onset of 1-3 hours, a peak of 8 hours and a duration of 12-16 hours. Novolin R is a short-acting insulin which has an onset of 30- 60 minutes, a peak of 2-4 hours and a duration of 5-6 hours. See http://www.niddk.nih.gov (National Institute of Health.)

the monitoring schedule on April 7, 2015. Additionally, Plaintiff alleges that between January 8, 2015, and April 14, 2015, Proctor, without ever seeing him, changed the treatment program 21 times. These changes, according to Plaintiff, included type of insulin and dosage. Plaintiff further alleges that Tenney and Proctor refused to send him to a specialist or provide him with an insulin pump. Finally, Plaintiff alleges that despite knowing that his condition has been out of control for years, Proctor has failed to order and/or provide education and proper treatment of his diabetes.

With respect to Plumley, the Warden at HCC, Plaintiff alleges that he, or his designated representative, has denied every medical grievance filed, expect one. Plaintiff maintains that a medical decision had to be made in order to deny those grievances, and Plumley is not qualified to make such decision. Plaintiff further alleges that Plumley has offered no help in resolving this matter or getting proper medical care for his diabetic condition.

With respect to Tenney, the Health Services Administrator, Plaintiff alleges that he misrepresented facts in the grievance procedure in order to mislead and obstruct relief from being granted. Plaintiff specifically alleges that Tenney instructed him to eat appropriate items but never offered, ordered or otherwise provided him with any self management education. In addition Plaintiff alleges that Tenny falsely stated this his A1C went up instead of down while he was on Lantus. Plaintiff also alleges that Tenney's statement that he has been on a 2800 caloric diabetic diet for years is false, and he refused to provide information on NPH insulin. Plaintiff also alleges that both Tenney and Proctor refuse to allow him to see a registered dietician.

Finally, with respect to Hissom, Director of Inmate Health Services, Plaintiff alleges that she ignored and neglected his serious medical needs as presented in all of his grievances pertaining to medical issues. Plaintiff maintains that she knew of should have known that the

physician at HCC, an osteopath, cannot treat diseases with a system emphasizing manipulation, and therefore, his treatment was grossly inadequate for diabetes.

For relief, Plaintiff requests compensatory damages, In addition, he seeks injunctive relief, including proper diabetic care for the duration of his incarceration, substantial changes in the way diabetics are monitored and treated that will adhere to the standards set by the American Diabetes Association and an order the he be housed in a single cell for the remainder of his incarceration so that he may monitor and take care of his diabetic condition.

**B. Motion to Dismiss by Defendants Marvin Plumley and Debbie Hissom.**

Defendants Plumley and Hissom contend that Plaintiff's complaint should be dismissed because it fails as a matter of law. More specifically, these Defendants allege that they are agents of the state, and not persons under 42 U.S.C. § 1983, and therefore are not subject to suit. In addition, these Defendants allege that to the extent any claims remain beyond the claims based on § 1983, they are entitled to qualified immunity.

**C. Supplemental Motion to Dismiss by Defendants Marvin Plumley and Debbie Hissom**

In their supplemental motion, these Defendants reassert their original grounds for dismissal and also address Plaintiff's claim for injunctive relief. More specifically, these Defendants argue that Plaintiff's attempts to state a claim for injunctive relief are improper because injunctive relief may not be used to prescribe the manner in which officials must act.

**D. Plaintiff's Response**

Plaintiff argues that he did not sue these Defendants in their official capacities, and therefore, the Eleventh Amendment does not shield them from liability. In addition Plaintiff argues that when a state official is sued in their official capacity, and is sued for injunctive relief, said official becomes a person under 1983 because official capacity actions for prospective relief

are not treated as actions against the state. Finally, Plaintiff argues that a prison official may be held liable under § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance process.

**E.  Reply by Defendants Marvin Plumley and Debbie Hissom**

Defendants maintain that the grievances filed by Plaintiff establish that adequate treatment was ultimately available to him.  Defendants argue that Plaintiff's continued to request specific treatment, and accordingly, the grievances never advised Plumley of any alleged unconstitutional violation.   In addition, Defendants maintain that Plaintiff has failed to establish that Hissom had any personal involvement in the deprivations alleged in the complaint.

**F. Motion to Dismiss by Defendants David Proctor and Tristen Tenney**

Defendants have filed their Motion to Dismiss pursuant to FRCP 12(b)(5) on the basis of insufficient of service of process. These Defendants note that Plaintiff, because he is a party, may not serve the complaint. In addition, these Defendants note that Plaintiff filed to comply with Rule 4 (e) because he failed to follow state law for serving a summons by mail.

**G. Plaintiff's Response**

Plaintiff, in his response, asserts that the Motion to Dismiss was ten days late, and therefore, any defenses must be adjudicated as waived.  More specifically, Plaintiff alleges that whether or not service was proper, the record shows Defendants received the summons and complaint on June 5, 2015, and the Motion to Dismiss was not filed until July 7, 2015, which is eleven days longer than allowed, because a defendant must serve an answer within 21 days after being served. Plaintiff also argues that he had until September 18, 2015, to again serve Defendants.

**H. Defendants Proctor's and Tenney's Reply**

Defendants maintain that because they were never properly served, their motion to contest that service is proper and timely. In addition, Defendants note that Plaintiff has also attempted to serve them through a Notice of Lawsuit and Request to Waive Service of Summons pursuant to Rule 4 (d) of the Federal Rules of Procedure. However, Defendants argue that Local Rule of Civil Procedure 4.01 provides that a plaintiff must mail and file the Notice and Request to Waive Service within fourteen (14) days of the filing of the Complaint. Furthermore, Defendants argue that Rule 4.01 further provides that if the plaintiff fails to mail and file the Notice and Request within the period specified, service shall be effected by means other than waiver of service unless otherwise ordered.

## III. <u>Standard of Review</u>

## <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. <u>Revene v. Charles County Comm'rs</u>., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u>; <u>see also</u> <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id</u>.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, <u>Haines</u>, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. <u>Id</u>. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are

outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

### III. Analysis

### A. Deliberate Indifference to Serious Medical Needs

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[7]

---

[7] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305,

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v.

312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998); Beaman v. Unger, 838 F.Supp.2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) report and recommendation adopted, 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D. P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

**1) Marvin Plumley, Warden**

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, to establish liability under §1983, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainright, 802 F.2d 397, 401 (11th Cir. 1986). Here, Plaintiff's entire claim against Plumley appears to be that he denied Plaintiff's administrative grievances with respect to his medical care at HCC.

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel, like a warden, may rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Miltier, *supra* at 855. Accordingly, Rubenstein, as the Commissioner

of the West Virginia Division of Corrections, did not and should not substitute his own medical judgment for that of medical professionals.

Plaintiff has not made any credible claims that Plumley was personally involved in the violation of his constitutional rights. Instead, it appears that Plaintiff names Plumley only in his official capacity as the Warden of HCC. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978)).

There is no *respondeat superior* liability under §1983. See Monell, 436 U.S. at 691; see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra*. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under §1983 if the following elements are established:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[8]

Liberally construed, Plaintiff's complaint alleges that Defendants were deliberately indifferent to his severe medical condition, diabetes, by failing to monitor his blood glucose levels four time a day, treating him with less expensive and less effective insulin, failing to educate him on proper diet, failing to provide him with an insulin pump, failing to send him to a specialist (presumably an endocrinologist) and failing to send him to a registered dietician. Nowhere does Plaintiff assert that Defendants' alleged deliberate indifference to his medical needs is part of a pattern or custom at the West Virginia Division of Corrections. He instead cites case law from other jurisdictions in support of his argument that Plumley has a personal or public duty to ensure him adequate medical care. ECF No. 29 at 3-4. Plaintiff's clear position is that Plumley should be liable for the acts of his "subordinates" in denying care because he was duly informed of the lack of medical treatment and upheld this lack of treatment through the grievance procedure.

Regardless of Plaintiff's insistence that Plumley has a personal duty to ensure adequate care, the case law in this jurisdiction is that non-medical supervisory personnel, such as wardens, are entitled to rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Militier, supra at 855. Accordingly, Plumley was entitled to rely on the HCC's medical staff's decisions regarding Plaintiff's care. Further, to the extent that Plaintiff is asserting that Plumley was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit, because that is not the type of personal involvement

---

[8] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

required to state a <u>Bivens</u>[9] claim.  <u>See</u> <u>Paige v. Kuprec</u>, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

Because Plaintiff fails to allege any credible personal involvement on the part of Plumley beyond the denial of his grievances, he does not make any allegations which reveal the presence of the required elements for supervisory liability, and he fails to state a claim against Plumley.

**2) <u>Debbie Hissom, R.N., BSN</u>**

According to Plaintiff's complaint, Defendant Hissom is the Director of Health Services for the West Virginia Division of Corrections. ECF No. 1 at 2. As with Plumley, Plaintiff does not allege that Hissom had any direct involvement in any decision regarding his medical care. Rather, Plaintiff's sole allegation against Hissom is that "[b]y ignoring and neglecting Plaintiff's serious medical needs as presented in all grievances contained in the 'ATTACHMENT' pertaining to medical issues and mailed to Charleston, Hissom, a Registered Nurse, knew, or show have known that the practicing physician at Huttonsville, an Osteopath[,] cannot treat diabetes with a system of treating the disease emphasizing manipulation, and thus provided the Petitioner [sic] with grossly inadequate treatment of his diabetic melitus condition, **a life threatening situation.'** ECF No. 1 at 17 (enphasis in original).

As noted above, liability under §1983 is personal, based upon each defendant's own constitutional violations. <u>See</u> <u>Trulock</u>, *supra* at 402. Because Hissom had no personal involvement in Plaintiff's medical care, Plaintiff cannot prove she committed or failed to perform any act in violation of his constitutional rights, let alone show that she was causally connection to any harm he suffered. <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986).

---

[9] It is well established that case law under 42 U.S.C. §1983 is applicable to <u>Bivens</u> actions.  <u>See</u> <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

In making a recommendation for a ruling on a motion to dismiss, the undersigned must "'accept as true all of the factual allegations contained in the complaint,' and 'draw all reasonable inferences in favor of the plaintiff.'" Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). To prevail, a plaintiff must "state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). It is true that a district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded. See Haines v. Kerner, *supra* at 520. However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here again, despite Plaintiff's insistence otherwise, Hissom has only a supervisory position at the WVDOC, and has no personal involvement in Plaintiff's medical care. Because she had no personal involvement in his care, Plaintiff cannot prove she committed any act that violated his constitutional rights, let alone show she is causally connected to any harm he suffered. See Zatler, 802 F.2d at 401. Likewise, to the extent that Plaintiff is asserting that Hissom was deliberately indifferent to his needs because of her role in denying his administrative grievances, again, as noted above*,* that claim also lacks merit, because that is not the type of personal involvement required to state a claim. Paige *supra* at *1.

**B. Service of Process**

Defendants Proctor and Tenney argue that service upon them was insufficient under Rule 4(c)(2) of the Federal Rules of Civil Procedure because Plaintiff, a party to this action, is the one who attempted service upon them by personally mailing a copy of the Summons and Complaint to them. More specifically, these Defendants argues that Plaintiff did not follow West Virginia Rules of Civil Procedure 4(d)(1)(D) by having the Clerk send a copy of the Summons and Complaint to the individual via certified mail, return receipt requested, and delivery restricted to the addressee, or by 4(d)(1)(E), by having the Clerk send a copy of the Summons and Complaint via first class mail, postage pre-paid, to the person to be served . . . ." In addition, Proctor and Tenney argue that although Plaintiff subsequently attempted to serve them through a Notice of Lawsuit and Request to Waive Service of Summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, he exceeded the time limitation set forth in Rule 4.01 of the Local Rules of Civil Procedure, which requires that a plaintiff must mail and file the Notice and Request within fourteen (14) days of filing the complaint.

When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D. W. Va. 2009).Rule 4 of Federal Rules of Civil Procedure sets forth the requirements for service, providing in pertinent part:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
> 1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where services is made; or
>
> 2) doing any of the following:

A) delivering a copy of the summons and of the complaint to the individual personally;

B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

There is no question in the record that Plaintiff is the one who attempted to serve Defendants by mailing the Summonses and Complaints by certified mail, which, as a party, he is precluded from doing under Fed.R.Civ.P. 4(c)(2). In fact Plaintiff acknowledged as much when he filed his June 24, 2015, Motion for a Court Order of Service to be made by the United States Marshal . . . . ECF No. 24. Likewise, Plaintiff's attempt to serve Proctor and Tenney through a Notice of Lawsuit and Request to Waive Service is ineffective because the same was not attempted until the deadline provided by Local Rules of Civil Procedure 4.01 and no order has been entered permitting late service under 4.01.

The undersigned recognizes that Plaintiff alleges that the Motion to Dismiss is untimely because Proctor and Tenney were "served" on June 5, 2015, but did not file the Motion within twenty-one days, instead waiting thirty-two days. However, Rule 12(a) provides only that a responsive pleading must be served with twenty-one days after service of the summons and complaint. With respect to 12(b) defenses, the rule provides only that a motion asserting any of the defenses, including insufficient service of process, must be made before pleading if a responsive pleading is allowed.[10] Furthermore, motions under Rule 12(b)(5) differ from other motions permitted by 12(b) somewhat in that they provide the district court with a course of

---

[10]In fact, at least one court has found that a Motion to Dismiss pursuant to Rule 12(b)(5) filed forty-one days after the complaint was filed was premature because Rule 4(m) allows a plaintiff 120 days to serve a defendant with process. McClelland v. Southern Financial Systems, 2010 WL 3780385 (S.D. Miss. Sept. 21, 2010). In addition, interpreting the predecessor rule, Courts have stated a party does no waive an argument under Rule 12(b) simply by failing to timely respond. Wong v. Party Gaming Ltd., 589 F.3d 821 (6th Cir. 2009).

action other than simply dismissing the case when the defendant's defense or objection is sustained. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1354 (3d ed.2010). In effect, the court may convert the motion to dismiss into a motion to quash service of process without dismissing the action. Id. See also Gartin v. Par Pharm. Cos., Inc., 289 Fed. App'x 688, 691-92 (5th Cir. 2008); Randolph v. City of East Palo Alto, No. 06-07476, 2007 WL 1232057 (N.D. Cal. April 26, 2007). (per curiam) (unpublished table decision).

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that the Motion to Dismiss {ECF No. 25] and Supplemental Motion to Dismiss [ECF No. 27] filed by Debbie Hissom and Marvin Plumley be **GRANTED**, and Plaintiff's complaint against said Defendants be **DENIED and DISMISSED with prejudice, for failure to state a claim upon which relief can be granted**. Further, the undersigned recommends that the Motion to Dismiss [ECF No. 30] filed by Tristan Tenney and David Proctor be construed as a Motion to Quash, that the same be **GRANTED** and Plaintiff be directed to serve Tenney and Proctor by a date certain. In making this recommendation, the undersigned notes that Rule 4.01 of the Local Rule of Civil Procedure appears to permit, by leave of court, Plaintiff's service by Notice and Request to Waive Service even though filed more than fourteen days after this complaint was filed. However, in the event that the Court declines to allow such service beyond the fourteen day time restriction, Plaintiff should be informed that service on Tenney and Proctor by the Clerk of Court through certified mail, return receipt requested with restricted delivery, will require prepayment of $35.70 and personal service by the United States Marshal will requirement payment of $483.15 as set forth in the Magistrate Judge's Order entered on July 8, 2015.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: February 9, 2016

_____

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE