# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOUGLAS ANDREW REDLESKI.**

      **Plaintiff,**

**v.**                                    **Civil Action No. 1:15cv89**
                                                  **(Judge Keeley)**

**DAVID PROCTOR, Practicing Physician,**
**TRISTEN TENNY, RN, HSA,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

Douglas Redleski ("Plaintiff"), an inmate incarcerated at the Huttonsville Correctional Center ("HCC") in Huttonsville, West Virginia, initiated this *pro se* case on May 27, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. §1983 against four defendants: Warden Marvin Plumley, Nurse Debbie Hissom, Dr. David Proctor, and Health Services Administrator Tristen Tenny. ECF No. 1. On May 28, 2015, the Plaintiff paid the $400 filing fee. ECF No. 11. On June 1, 2015, the undersigned's predecessor, Magistrate Judge John Kaull, conducted a preliminary review of the Complaint and determined that summary dismissal was not warranted, and Defendants should be made to file an answer. Because Plaintiff paid the filing fee and his application to proceed IFP was denied as moot, he was not entitled to court ordered service of process by the United States Marshall Service. Instead, Plaintiff was notified that he was responsible for obtaining service of process on his own and was advised of the requirements of Rule 4(m) of the Federal Rules of

Civil Procedure [ECF No. 16], and the Clerk of Court issued a summons for each of the defendants. ECF No. 17.

On June 25, 2015, Hissom and Plumley filed a Motion to Dismiss. ECF No. 25. On June 26, 2015, Defendants Hissom and Plumley filed a Supplemental Motion to Dismiss. ECF No. 27. On July 7, 2015, Tenny and Proctor filed a Motion to Dismiss. ECF No. 30.

On July 8, 2015, the Magistrate Judge granted Plaintiff's Motion for a Court Order for Service by the United States Marshal. In granting the Motion, the Magistrate Judge noted that Hissom and Plumley had filed a Motion to Dismiss and a Supplemental Motion to Dismiss, neither of which raised improper service as a defense, and therefore, those Defendants had waived the same. However, Proctor and Tenny, had filed a Motion to Dismiss on the basis of insufficiency of service and had correctly noted that Plaintiff's service by certified mail did not comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. Therefore, the Marshal was directed to serve Proctor and Tenny at the HCC, provided however, because Plaintiff was not proceeding IFP, he was required to first pay the service fee of $483.15.[1]

On July 14, 2015, Plaintiff filed a Certificate of Service indicating that he had served an original and one copy of a Notice of a Lawsuit and Request to Waive Service of Summons and Waiver of Summons and a copy of the complaint on Tenny and Proctor by mailing the same by certified mail returned receipt on July 13, 2015. ECF No. 39. In addition, on July 15, 2015, Plaintiff filed a

---

[1] The fee was based on a fee of $65/hour for six hours plus $0.575 per mile for a 162 mile round trip from the Clarksburg Office.

2

Response in Opposition to Tenny's and Proctor's Motion to Dismiss. ECF No. 40. On July 23, 2015, Tenny and Proctor filed a reply. ECF No. 44.

On February 26, 2016, the undersigned issued a Report and Recommendation in which he recommended the Motion to Dismiss filed by Debbie Hissom and Marvin Plumley be granted, and the Motion to Dismiss by Tristan Tenny and David Proctor be construed as a Motion to Quash and be granted. ECF No. 52. On March 4, 2016, the Court adopted the Report and Recommendation and granted the Motion to Dismiss by Hissom and Plumley's Motion to Dismiss and converted the Motion by Proctor and Tenny to a Motion to Quash service of process. ECF No. 54. Accordingly, Defendants Plumley and Hissom were terminated as defendants.

On March 16, 2016. Defendants Proctor and Tenny waived service of process. ECF Nos. 58, 59. On May 9, 2016, they filed a Motion to Dismiss with exhibits. ECF No. 61. A <u>Roseboro</u> Notice of issued on May 10, 2016. On May 23, 2016, Plaintiff filed a Response in opposition to the pending Motion to Dismiss.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

In his complaint, Plaintiff alleges that he suffers from "uncontrolled diabetic mellitus, which has caused serious medical grief such as diabetic neuropathy with serious visual complications, cataracts, adhesive capsulitis, memory problems, balance problems, gum disease, and autonomic neuropathy." ECF No. 1 Plaintiff further alleges that Proctor, the Physician at HCC, has written numerous orders without first speaking to him to inquire into facts necessary to make a professional judgment into his diabetic condition. In addition,

Plaintiff alleges that he was not made aware of any order for a diabetic diet until April 2, 2015, and although a diabetic diet order may have been issued on March 28, 2014, he was not made aware of it.

Plaintiff further alleges that Tenney, the Health Service Administrator, determined that he has "uncontrolled diabetes." Despite this determination, Plaintiff maintains that the medical records attached to his complaint clearly show that between March 23, 2010,[2] and June 14, 2014, defendant Proctor, did "absolutely nothing to end the 'uncontrolled diabetes.'" ECF 1 at 9. Plaintiff elaborates on this accusation by noting that Proctor not only has written orders without first speaking with him, he failed to have his blood glucose levels checked after meals or before bedtime. Instead, Plaintiff maintains that the medical unit only monitored his blood glucose levels twice a day at 6:30 a.m. and 4:30 p.m, both of which were before meals. Additionally, Plaintiff alleges that without seeing him, Proctor raised his Lantus insulin dosage on three occasions, and again without seeing him, discontinued the Lantus insulin, and "doggedly persisted in a course of treatment known to be ineffective (NPH insulin) and without any monitoring schedule." ECF No. 1 at 10-11.[3]

---

[2]Exhibits attached to the complaint indicate that Plaintiff arrived at HCC on January 15, 2010. ECF No. 1-2 at 43.

[3]It would appear that there are several types of insulin that can be prescribed for the treatment of diabetes. Each type of insulin has an onset, a peak and a duration time. The onset is how soon the insulin starts to lower blood glucose after it is taken. The peak is the time the insulin is working the hardest to lower blood glucose. The duration is how long the insulin lasts, i.e., the time it keeps lowering blood glucose. Lantus is a long-acting insulin which has an onset of one hour, is peakless, and has a duration of 10-16 hours. NPH (N) is an intermediate acting insulin that covers insulin needs for about half the day or overnight. This type of insulin is often combined with a rapid-or short-acting insulin. http://www.webmd.com It appears that Plaintiff has been prescribed Novolin N with Novalin R [ECF No. 1-1 at 50] and Humulin N with Humulin R. ECF No. 1-2 at 1. Novolin N, the intermediate-acting insulin, has an onset of 1-3 hours, a peak of 8 hours and a duration of 12-16 hours. Novolin R , a short-acting insulin has an onset of 30- 60 minutes, a peak of 2-4 hours and a duration of 5-6 hours. See http://www.niddk.nih.gov (National Institute of Health.). Humulin N, the intermediate-acting insulin, has an onset of 1-3 hours, peak of 8 hours and duration of 12-16 hours. Humulin R, a short-acting insulin, has an onset of 30 to 60 minutes, a peak of 2-4 hours, and a duration of 5-8 hours. https://www.reference.com

Plaintiff also alleges that on March 16, 2015, his A1C was checked and found to be 10, which is high. Despite this reading, Plaintiff maintains that Proctor decreased his insulin from 35 to 30 units NPH., without seeing him and without ordering a monitoring schedule. Plaintiff also alleges that on March 17, 2015, after five (5) years of high A1C tests, Proctor ordered a monitoring schedule of four times a day for thirty days. However, when progress started to show, Proctor discontinued the monitoring schedule on April 7, 2015. Additionally, Plaintiff alleges that between January 8, 2015, and April 14, 2015, Proctor, without ever seeing him, changed the treatment program 21 times. These changes, according to Plaintiff, included type of insulin and dosage. Plaintiff further alleges that Tenney and Proctor refused to send him to a specialist or provide him with an insulin pump. Finally, Plaintiff alleges that despite knowing that his condition has been out of control for years, Proctor has failed to order and/or provide education and proper treatment of his diabetes.

With respect to Tenney, the Health Services Administrator, Plaintiff alleges that he misrepresented facts in the grievance procedure in order to mislead and obstruct relief from being granted. Plaintiff specifically alleges that Tenney instructed him to eat appropriate items but never offered, ordered or otherwise provided him with any self management education. In addition Plaintiff alleges that Tenny falsely stated this his A1C went up instead of down while he was on Lantus. Plaintiff also alleges that Tenney's statement that he has been on a 2800 caloric diabetic diet for years is false, and he refused to provide information on NPH insulin. Plaintiff also alleges that both Tenney and Proctor refuse to allow him to see a registered dietician.

5

For relief, Plaintiff requests compensatory damages, In addition, he seeks injunctive relief, including proper diabetic care for the duration of his incarceration, substantial changes in the way diabetics are monitored and treated that will adhere to the standards set by the American Diabetes Association and an order the he be housed in a single cell for the remainder of his incarceration so that he may monitor and take care of his diabetic condition.

**B. <u>Motion to Dismiss</u>**

In support of their Motion to Dismiss, Defendants note that Plaintiff failed to disclose that he filed a Petition for Writ of Habeas Corpus in the Circuit Court of Randolph County, West Virginia, on February 22, 2011, wherein he complained that he was being treated with "deliberate indifference" by Dr. Proctor and Tristan Tenney. Defendants maintain that the petition clearly discloses that Plaintiff was making the same complaints in that petition as he is making in the civil action pending in this Court. By Order dated July 25, 2011, Judge Wilfong dismissed the petition. Accordingly, Defendants argue that, at a minimum, this Court should dismiss all claims for relief and all complaints contained in the current lawsuit which date from October 15, 2009, until July 25, 2011. Defendants further contend that the allegations in the current complaint are simply more of the same contained in the 2011 petition, and therefore, Plaintiff has had his day in court with reference to his complaints that the treatment he received at HCC constitute deliberate indifference to a serious medical need.

With specific respect to Tristan Tenney, Defendants contend that the Plaintiff's complaint against him involves responses to the grievances and medical services requests regarding treatment prescribed by Dr. Proctor and not any direct medical care provided by

him. Accordingly, Defendants allege that Tenney should be dismissed for lack of personal involvement.

Finally, Defendants contend that the complaint should be dismissed against both Tenney and Dr. Proctor because it fails to allege sufficient facts to state a claim for deliberate indifference.

### III. Standard of Review

#### Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (citations omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Moreover, in *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, *Haines*, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.

*Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001)(cited with approval in *Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011).

### III. <u>Analysis</u>

**A.** <u>**Claim Preclusion**</u>

On February 22, 2011, the Plaintiff filed a similar action in West Virginia state court (hereinafter the "2011 action"). ECF No. 61-2 at 1. Among others, the 2011 action named Tristian Tenny and David Proctor as defendants. *Id.* The 2011 action alleged that the Plaintiff was subject to cruel and unusual punishment because of the defendants' deliberate indifference to the Plaintiff's serious medical needs. *Id.* On July 25, 2011, in a two-page opinion, West Virginia state court Judge Wilfong stated:

> The Court is of the opinion that it simply seems that the Petitioner disagrees with the HCC treating physician as to his course of treatment. The conditions, as they existed, were not and are not at this time the basis for a

9

cruel and unusual punishment claim under the Constitution of the United States or the State of West Virginia.

*Id.* at 2.

Defendants argue that Plaintiff's 2011 state court action bars him from bringing the current action. Indeed, "judgment dismissing the previous suit 'with prejudice' bars a later suit on the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955).

Here, the complained of conduct is substantially similar in both actions and both involve Defendant Proctor and Defendant Tenney. However, simply that "both suits involved 'essentially the same course of wrongful conduct' is not decisive" *Id.* "While the [first] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at 328.

Both actions involve the care the Plaintiff received for his diabetes and the same defendants. Thus, any complained of conduct in the current action that occurred before July 25, 2011—the date the first judgment was entered—is likely barred by claim preclusion. However, the majority of the complained of conduct in the current action occurred after July 25, 2011 and therefore, is not precluded.

## B. Deliberate Indifference

The Plaintiff argues that the Defendants violated his Eighth Amendment rights by failing to provide adequate medical care while in state custody. To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Therefore, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation suffered by a prisoner, but *only* that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillan*, 503 U.S. 1, 20 (1970) (emphasis original).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert.denied*, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[4]

---

[4]The following are examples of what does or does not constitute a serious medical condition. A rotator cuff injury is not a serious medical condition. *Webb v. Prison Health Services*, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. *Browning v. Snead*, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. *Finley v. Trent*, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. *Clinkscales v. Pamlico Correctional Facility Med. Dep't.*, 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the *Estelle* standard. *Chance v. Armstrong*, 143 F.3d 698, 702 - 703 (2d Cir. 1998). A degenerative hip a serious condition. *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994). Under

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *See Morales Feliciano v. Calderon Serra*,

---

the proper circumstances, a ventral hernia might be recognized as serious. *Webb v. Hamidullah*, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. *Giambalvo v. Sommer*, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012).

300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

Plaintiff's complaint, and the attachments thereto, establish that he is an insulin dependent diabetic, which is clearly a serious medical condition. Moreover, his 2011 action establishes that he is a Type 1[5] diabetic, who was diagnosed approximately 40 years before he filed that action.[6] ECF No. 61-1 at 3. The Plaintiff has been in the custody of the West Virginia Department of Corrections since 1996, after being sentenced to a term of 26 years to life. *Id.* at 3. Until his arrival at HCC on January 16, 2010 [ECF No. 1-2 at 43], Plaintiff was housed at Mount Olive Correctional Center ("MOCC"). ECF No. 61-1 at 3.

Defendants allege that "it is incredulous that the plaintiff would claim that Dr. Proctor and Tristan Tenney have been deliberately indifferent to his diabetic condition and then attach nearly 150 pages of documentation showing exactly the opposite." ECF No. 62 at 7. Attached to Plaintiff's complaint are 121 pages of exhibits. Many are medical records which are not legible and are not within the understanding of a lay person such as the undersigned. The remainder of those pages are inmate medical service requests and inmate grievances with responses.

However, the undersigned is not at all convinced that the documentation presented by the Plaintiff, and referenced by the Defendants, defeats his claim of deliberate indifference. While the undersigned recognizes that further investigation may reveal that Proctor and or Tenney have provided adequate care, construing Plaintiff's

---

[5] Type 1 diabetes is usually diagnosed in children and young adults and was previously known as juvenile diabetes. In type 1 diabetes, the body does not produce insulin. http://www.diabetes.org.
[6] The Plaintiff was born in 1958, and therefore, the undersigned deduces that he was diagnosed around the age of 13.

pleading liberally and in a light most favorable to him, the undersigned finds that the complaint states a plausible claim for deliberate indifference to a serious medical condition in violation of the Eighth Amendment.

It is clear from the portions of the medical records which are legible, and Tenney's responses to his grievances, Plaintiff is currently an uncontrolled or, at best, poorly controlled diabetic. Because Plaintiff is incarcerated, he must depend on the medical unit to monitor his glucose on a daily basis and provide him with his insulin injections. Furthermore, he must eat in the dining hall and/or supplement meals from the commissary. Despite being prescribed a 2800 diabetic diet, Plaintiff maintains, and the records appear to support, that he is being forced to choose between receiving his insulin or eating the diet which was prescribed by Dr. Proctor. There is no indication that either Proctor or Tenney have attempted to move Plaintiff's housing location to allow him to get his finger prick and insulin and to make the "diet line" for either breakfast or dinner. Plaintiff further alleges, and there is no record to the contrary, that despite his A1C being high, he is currently receiving the lowest dosage of NPH insulin ever prescribed to him. Finally, although Tenney has instructed Plaintiff to be compliant with treatment ordered by the doctor [ECF No. 1-1 at 50], and noted that Dr. Proctor has documented diet counseling with Plaintiff during chronic care clinic, the undersigned can find no treatment orders directed to Plaintiff or chronic care clinic notes.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that Defendants' Motion to Dismiss [ECF No. 61] be **DENIED**, and a scheduling order be entered.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: February 14, 2017.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE