IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOUGLAS ANDREW REDLESKI.**

      **Plaintiff,**

v.                                                 **Civil Action No. 1:15cv89**
                                                                     **(Judge Keeley)**

**DAVID PROCTOR, Practicing Physician,**
**TRISTEN TENNY, RN, HSA,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

Douglas Redleski ("Plaintiff"), an inmate now incarcerated at Denmar Correctional Center ("DCC") in Hillsboro, West Virginia, initiated this *pro se* case on May 27, 2015, by filing a civil rights complaint pursuant to 42 U.S.C. §1983 against four defendants: Warden Marvin Plumley, Nurse Debbie Hissom, Dr. David Proctor, and Health Services Administrator Tristen Tenny, all of whom were employed at Huttonsville Correctional Center ("HCC"). ECF No. 1. On June 1, 2015, Magistrate Judge John Kaull conducted a preliminary review of the complaint and determined that summary dismissal was not warranted, and Defendants should be made to file an answer. The Clerk of Court issued a summons for each of the defendants. ECF No. 17.

On June 25, 2015, Hissom and Plumley filed a Motion to Dismiss. ECF No. 25.  On June 26, 2015, Defendants Hissom and Plumley filed a Supplemental Motion to Dismiss. ECF No. 27.  On July 7, 2015, Tenny and Proctor filed a Motion to Dismiss. ECF No. 30.

On February 9, 2016, Magistrate Judge Michael John Aloi issued a Report and Recommendation in which he recommended the Motion to Dismiss filed by Debbie Hissom and Marvin Plumley be granted, and the Motion to Dismiss by Tristan Tenny and David Proctor be construed as a Motion to Quash and be granted. ECF No. 52. On March 4, 2016, the Court adopted the Report and Recommendation and granted the Motion to Dismiss by Hissom and Plumley's Motion to Dismiss and converted the Motion by Proctor and Tenny to a Motion to Quash service of process. ECF No. 54. Accordingly, Defendants Plumley and Hissom were terminated as defendants.

On March 16, 2016. Defendants Proctor and Tenny waived service of process. ECF Nos. 58, 59. On May 9, 2016, they filed a Motion to Dismiss with exhibits. ECF No. 61. A Roseboro Notice was issued on May 10, 2016. On May 23, 2016, Plaintiff filed a Response in opposition to the pending Motion to Dismiss. ECF No. 66.

On February 14, 2017, Magistrate Judge Aloi issued a Report and Recommendation that Defendants' Motion to Dismiss be denied. No Objections were filed, and on March 6, 2017, the Court entered an Order adopting the Report and Recommendation. ECF No. 75.

On March 13, 2017, Defendants filed an answer to the complaint. ECF No. 77. On August 10, 2017, Magistrate Judge Aloi conducted a motion hearing, at which hearing, Plaintiff was placed under oath and provided testimony. On April 17, 2017, a scheduling order was entered. ECF No. 79. On September 15, 2017, this matter was reassigned to the undersigned. On January 29, 2018, Defendants filed a Motion for Summary Judgment with exhibits and supporting memorandum. ECF Nos. 132, 133. On January 31, 2017, a Roseboro Notice was issued ECF No. 136. On February 12, 2018,

2

the Plaintiff filed a response in opposition to the motion for summary judgment [ECF No. 138], and on February 26, 2018, Defendants filed a reply. ECF No. 140.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, Plaintiff alleges that he suffers from "uncontrolled diabetic mellitus, which has caused serious medical grief such as diabetic neuropathy with serious visual complications, cataracts, adhesive capsulitis, memory problems, balance problems, gum disease, and autonomic neuropathy." ECF No. 1 Plaintiff further alleges that Proctor, the physician at HCC, has written numerous orders without first speaking to him to inquire into facts necessary to make a professional judgment into his diabetic condition. In addition, Plaintiff alleges that he was not made aware of any order for a diabetic diet until April 2, 2015, and although a diabetic diet order may have issued on March 28, 2014, he was not made aware of it.

Plaintiff further alleges that Tenney, the Health Service Administrator, determined that he has "uncontrolled diabetes." Despite this determination, Plaintiff maintains that the medical records attached to his complaint clearly show that between March 23, 2010,[1] and June 14, 2014, defendant Proctor, did "absolutely nothing to end the 'uncontrolled diabetes.'" ECF 1 at 9. Plaintiff elaborates on this accusation by noting that Proctor not only has written orders without first speaking with him, he failed to have his blood glucose levels checked after meals or before bedtime. Instead, Plaintiff maintains that the medical unit only monitored his blood glucose levels twice a day at 6:30 a.m. and 4:30 p.m, both of which were before meals. Additionally, Plaintiff alleges that without seeing him, Proctor

---

[1]Exhibits attached to the complaint indicate that Plaintiff arrived at HCC on January 15, 2010. ECF No. 1-2 at 43.

3

raised his Lantus insulin dosage on three occasions, and again without seeing him, discontinued the Lantus insulin, and "doggedly persisted in a course of treatment known to be ineffective (NPH insulin) and without any monitoring schedule." ECF No. 1 at 10-11.[2] Plaintiff also alleges that on March 16, 2015, his A1C was checked and found to be 10, which is high. Despite this reading, Plaintiff maintains that Proctor decreased his insulin from 35 to 30 units NPH., without seeing him and without ordering a monitoring schedule. Plaintiff also alleges that on March 17, 2015, after five (5) years of high A1C tests, Proctor ordered a monitoring schedule of four times a day for thirty days. However, when progress started to show, Proctor discontinued the monitoring schedule on April 7, 2015. Additionally, Plaintiff alleges that between January 8, 2015, and April 14, 2015, Proctor, without ever seeing him, changed the treatment program 21 times. These changes, according to Plaintiff, included type of insulin and dosage. Plaintiff further alleges that Tenney and Proctor refused to send him to a specialist or provide him with an insulin pump. Finally, Plaintiff alleges that despite knowing that his condition has been out of control for years, Proctor has failed to order and/or provide education and proper treatment of his diabetes.

With respect to Tenney, the Health Services Administrator, Plaintiff alleges that he misrepresented facts in the grievance procedure in order to mislead and obstruct relief from being granted. Plaintiff specifically alleges that Tenney instructed him to eat

---

[2] It would appear that are several types of insulin that can be prescribed for the treatment of diabetes. Each type of insulin has an onset, a peak and a duration time. The onset is how soon the insulin starts to lower blood glucose after it is taken. The peak is the time the insulin is working the hardest to lower blood glucose. The duration is how long the insulin lasts, i.e., the time it keeps lowering blood glucose. Lantus is a long-acting insulin which has an onset of one hour, is peakless, and has a duration of 10-16 hours. The NPH prescribed to Plaintiff are Novalin N and Novalin R. ECF No. 1-1 at 50. Novolin N is an intermediate-acting insulin and has an onset of 1-3 hours, a peak of 8 hours and a duration of 12-16 hours. Novolin R is a short-acting insulin which has an onset of 30- 60 minutes, a peak of 2-4 hours and a duration of 5-6 hours. See http://www.niddk.nih.gov (National Institute of Health.).

appropriate items but never offered, ordered or otherwise provided him with any self management education. In addition Plaintiff alleges that Tenny falsely stated this his A1C went up instead of down while he was on Lantus. Plaintiff also alleges that Tenney's statement that he has been on a 2800 caloric diabetic diet for years is false, and he refused to provide information on NPH insulin. Plaintiff also alleges that both Tenney and Proctor refuse to allow him to see a registered dietician.

For relief, Plaintiff requests compensatory damages, In addition, he seeks injunctive relief, including proper diabetic care for the duration of his incarceration, substantial changes in the way diabetics are monitored and treated that will adhere to the standards set by the American Diabetes Association and an order the he be housed in a single cell for the remainder of his incarceration so that he may monitor and take care of his diabetic condition.

**B. <u>Motion for Summary Judgment</u>**

In their Motion for Summary Judgment, Defendants make four broad claim. First, with respect to Tristan Tenney, they argue that Plaintiff has asserted a claim of deliberate indifference by seeking to hold him responsible for medical care for which he has no authority or responsibility. According to Dr. Proctor, Tenney was the Health Services Administrator and a Registered Nurse at HCC until August 2015, and had day to day supervision of the Medical Unit which involved conducting meetings, ordering supplies and hiring and firing of non-physician staff. Defendant Proctor, in his affidavit, states that Tenney did not have supervisory responsibility over him or any other physician and could not direct physicians to prescribe or order any particular treatment or medication for the Plaintiff. Moreover, because Dr. Proctor was not his subordinate, counsel argues that Tenney cannot be held responsible under the theory of respondeat superior. Finally, to the

extent Plaintiff is alleging that Tenney was deliberately indifferent to his needs by responding to his administrative grievances, counsel alleges that this is without merit because that is not the type of personal involvement required to state a claim. Accordingly, counsel argues that because there is no genuine issue as to any material fact with respect to whether Tristan Tenney had the necessary personal involvement for personal liability pursuant to 42 U.S.C. § 1983, the complaint against him should be dismissed.

  Second, Defendants argue that no claim of deliberate indifference can be established against Dr. Proctor, because Plaintiff has not and cannot demonstrate deliberate indifference of this part. Counsel specifically argues that Plaintiff's diabetic condition has been appropriately monitored and treated, Plaintiff has more than adequate knowledge of his condition and all treatments which have been given to him, his condition was never ignored, and the appropriate treatment by Dr. Proctor has resulted in a good outcome for a patient with a severe history of diabetes. In addition, they argue that the affidavit of Dr. Proctor and the medical records attached as exhibits clearly show that Plaintiff's diabetic condition has been meticulously followed while he has been an inmate at Huttonville and add that the medical staff has gone above and beyond the standard customary treatment for diabetes in responding to Plaintiff's needs. Counsel also maintains that it is clear that Plaintiff simply will not accept the recommendations and treatment provided by Dr. Proctor and the medical staff at Huttonsville.

  Third, Defendants argue that the applicable statute of limitations for Plaintiff's claim of deliberate indifference is two years.  Because Plaintiff filed his complaint on May 27, 2015, Defendants argue that his claims prior to May 27, 2013, should be barred by the statute of limitations.

Finally Defendants argue that Plaintiff filed a Petition for Writ of Habeas Corpus in the Circuit Court of Randolph County, West Virginia on February 22, 2011, wherein he complained that he was being treated with "deliberate indifference" by Dr. Proctor and Tristan Tenney. Defendants maintain that the petition clearly discloses that the issues raised by Plaintiff therein are exactly the same as the issues in the instant complaint. The Circuit Court found that the records attached to the petition clearly showed that [Plaintiff] was adequately treated for diabetes, and was of the opinion that it simply seemed that [Plaintiff] disagreed with the HCC physician as to his course of treatment. Accordingly, the case was dismissed upon a finding that there "was not at this time the basis for a cruel and unusual punishment claim under the Constitution of the United States or the State of West Virginia." ECF No. 61-2 at . Therefore, Defendants argue that Plaintiff's complaint is barred by collateral estoppel.

C.      **Plaintiff's Response**

In his response, Plaintiff alleges that he suffers from "uncontrolled diabetic mellitus which has caused and will continue to cause serious medical grief such as diabetic neuropathy with serious visual complications, cataracts, adhesive capsilitus, memory problems, balance problems, gum disease, and autonomic neuropathy." ECF No, 138-1 at 1. Plaintiff continues to argue that Dr. Proctor has written numerous orders without first speaking to him in to inquire into facts necessary to make a professional judgment into his diabetic condition. Plaintiff further alleges that Tenney, the Health Service Administrator, denied him insulin and other necessary treatments as needed by him to control his diabetes. Plaintiff also argues that he does not have to wait for a threatened harm resulting from uncontrolled diabetes to occur before obtaining standing. Finally, he argues that deliberate indifference may be demonstrated by either actual intent or reckless disregard.

7

**D. Defendant's Reply**

Defendants maintain that with respect to Plaintiff's claims of deliberate indifference to a serious medical need, his objections only establish that he has a disagreement with Dr. Proctor and Tristan Tenney over the proper course of treatment for his diabetes. They then argue again that disagreements between a health care provider and an inmate over a diagnosis and the proper treatment course are not sufficient to support a deliberate indifference claim and questions of medical judgment are not subject to judicial review. Defendants also argue that Plaintiff's allegations that he has not received any education about diabetes while at HCC are belied by his very detailed recitations about insulin, how it impact his blood sugars, a complete understanding of the A1C measurements and other issues regarding diabetes. In addition, Defendants argue that while it is a goal to lower Plaintiff's A1C results, this has been unachievable due to his "self-imposed" diet. ECF No. 140 at 4. Finally, Defendants argue that there is no question that Plaintiff had every opportunity to fairly argue and litigate his case before the Circuit Court of Randolph County in 2011, and it is just as obvious that his complaints in that action were identical to the complaints made in this case with respect to his insulin treatments, frequency of testing, frequency of insulin administration, diet and snack bags. Accordingly, Defendants again maintain that this complaint should be dismissed on the basis of issue preclusion.

### III. Standard of Review

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. Analysis

The central issue in this case is Plaintiff's allegation that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care while in state custody.  To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that

9

objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Therefore, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation suffered by a prisoner, but **only** that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." Hudson v. McMillan, 503 U.S. 1, 20 (1970) (emphasis original).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert.denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[3]

---

[3] The following are examples of what does or does not constitute a serious medical condition. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2d Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d

---

F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. *Giambalvo v. Sommer*, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012).

11

Cir. 2003)).

Although the partes disagree on much, the following facts are not in dispute. Dr. Proctor is a licensed osteopathic physician, who obtained his degree from the West Virginia School of Osteopathic Medicine in 1986.[4] He is employed by Wexford Health Sources, Inc. ("Wexford"), as Medical Director at HCC, and has held that position since May 1, 2008. Wexford has a contractual agreement to provide inmate health services to all of the West Virginia Division of Corrections ("WVDOC") facilities throughout the state. ECF No. 106. Wexford has a multi-page guideline for care in the Diabetes Chronic Care Clinic. ECF No. 114-1. Plaintiff has been in the custody of the WVDOC since November 4, 1996, following his conviction in the Circuit Court of Preston County. Prior to his incarceration at HCC on January 15, 2010, he was incarcerated at Mount Olive Correctional Center ("MOCC"). He will be 60 years old on his next birthday and is a Type 1 diabetic[5], who was diagnosed as such when he was 13 years old. As a Type 1 diabetic, Plaintiff suffers from a serious medical condition. The contested issue is whether Defendants have been deliberately indifferent to his medical status as a Type 1 diabetic.

The record contains a quantity of medical records which are handwritten and largely illegible. However, records indicate that Plaintiff's A1C[6] has ranged from 9.5 on

---

[4]There is no indication that Dr. Proctor is board certified in any specialty such as family medicine, emergency medicine, or internal medicine.

[5]Type 1 diabetes is caused by absolute insulin deficiency, which results in inadequate amounts of insulin to facilitate glucose metabolism. Type 1 diabetes can occur at any age but usually presents at a younger age, with fairly severe symptom such as plyuria, plydipsia, and polyhagia. Patients are often prone to developing severe acute complications such as ketoacidosis." ECF No. 114-1 at 1.

[6]The A1C test result reflects the average blood sugar level for the past two to three months. Specifically, the A1C test measures what percentage of the patient's hemoglobin--a protein in red blood cells that carries oxygen--is coated with sugar (glycated). The higher the A1C level, the poorer the patient's blood sugar control and the higher the risk of diabetes complications.

December 15, 2011, to a high of 10.3 on September 20, 2013. The lowest A1C of record is 9.2 on March 14, 2012. ECF No. 138-1 at 19. The most recent level provided to the court is 9.7 on December 17, 2014. Id.  Patients with poor control, defined as A1C > 8.0 [ECF No. 138-1 at 33],  are to be seen in the Chronic Care Clinic as necessary but no less than every month until control improves. ECF No. 114-1 at 5. In addition, patients determined to be in poor control "need commissary monitoring by the provider or nurse and possibly a medical limitation on commissary purchases when indicated." Id. at 2.

As previously noted, Plaintiff's complaint alleges that he suffers from uncontrolled diabetes and Dr. Proctor has written numerous orders without first inquiring into facts necessary to make a professional judgment about his diabetic condition. In addition, he alleges that he was not made aware of any diabetic diet until April 2, 2015, and although a diabetic order may have issued earlier, he was not made aware of it. He also alleges that on March 16, 2015, his A1C was 10; yet Dr. Proctor decreased his insulin from 35 units to 30 units NPH. In addition, he alleges that on March 17, 2015, after five years of high A1C tests, Dr. Proctor ordered a monitoring schedule of four times a day for 30 days. However, when progress started to show, Dr. Proctor discontinued the monitoring schedule on April 7, 2015. Plaintiff also alleges that Defendants refuse to allow him to see a registered dietician.

In response, Defendants, in particular, Dr. Proctor opines:

> the reason Mr. Redleski does not have a HbA1C of '7 or less,' is due to his self-imposed diet. Not his medical diet, but the 'behind-the scenes' diet. As part of therapy, the medical staff check some patient's commissary lists so they can be advised regarding proper and improper purchases. Mr. Redleskii's lists consistently contained

---

mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643.

> frequent multiple entries containing bread, crackers, noodles, potato chips, candy bars, fruit punch, tortillas, apple danishes, and even ice cream. These purchases are not occasional, but are 'par for the course.' Neither I, nor any insulin, can compete with this. This type of eating has been discussed with Mr. Redleski. There has never been justification for any specialist consult regarding his diabetes, since getting the best diabetic control starts with the patient.

ECF No. 132-1 at 3.

Dr. Proctor also notes that since arrival at HCC, Plaintiff has had approximately 6,650 checks and doses of insulin. ECF No. 132-1 at 2. In addition, Dr. Proctor notes that the point of treatment is not just to "get a good sugar level" or even a "good HbA1C" . . . .it is to prevent end-organ damage." Id. at 3. Dr. Proctor then notes that they screen for end-organ damage at every Chronic Care Clinic, which occurs at a minimum of every 6 months, and often sooner. Id. Dr. Proctor then sets forth findings regarding Petitioner's eyes, feet, renal function and notes that although Plaintiff has mild nonproliferative diabetic retinopathy," he has no evidence of peripheral neuropathy or renal problems. Id. At 4-5. Therefore, Dr. Proctor concludes that Plaintiff is doing fine, not having any new issues and has no evidence of any diabetic damage. Id. at 5.

The undersigned recognizes that to the extent that Plaintiff simply prefers a different course of treatment is irrelevant to the issue of deliberate indifference. Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care."  See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Although the Court has been provided limited records, it is clear that Plaintiff has been provided the basic care required of a diabetic; glucose testing and administration of insulin.

14

However, in light of the protocol set forth in Wexford's Diabetic Guidelines for Chonic Care Clinic, it appears that Dr. Proctor has failed to follow these guidelines, and therefore, there is a genuine issue of material fact as to whether he has been deliberately indifferent to Plaintiff's serious medical condition. More specifically, as a poorly controlled diabetic, Plaintiff should be seen on a monthly basis in the chronic care clinic, yet there are no records that support anywhere close to this frequency. In addition, the guidelines call for monitoring of commissary purchases and a possible medical limitation on commissary purchases when indicated. Despite the fact that the record establishes that Plaintiff's H1C has been >9[7] since at least March 14, 2012, the first indication that the Plaintiff's commissary purchases were monitored was on April 8, 2015, when he was confronted with commissary lists for three months. ECF No. 132-1. Furthermore, although Defendants assert that Plaintiff's commissary lists consistently contain "frequent multiple entries containing bread, crackers, noodles, potato chips, candy bars, fruit punch, tortillas, apple danishes, and even ice cream," [ECF No. 132-1 at 3], they have failed to present commissary slips to support this allegation.[8]  In addition, although Defendants did not respond to the same, Plaintiff maintains that his current "renal diet" provides more sugar products that the regular diet. ECF No.138 at

---

[7]Hemoglobin A1C testing with a result of 9% corresponds to blood sugar of 210. ECF No. 210.

[8]On April 7, 2015, medical sent Plaintiff a memo which noted: "Mystery solved. You will be happy to learn that we discovered the problem with your glucose control: it's you. You will never obtain control by eating the food you buy. Much, if not most, of your commissary purchases cannot be eaten by any diabetic. Insulin going back to twice a day N, and no further changes to be made, except periodic adjustments.  Amazingly, your list includes pints and pints of ice cream, candy bars, bread, crackers, chips, apple danish, Ramen noodles, and on and on, (and on)." ECF No. 1-2 at 31. The commissary list attached is dated March 55, 2015, and includes  2- 20 oz. diet pepsi, 2 packages salted peanuts, 2  health mix, 2 deluxe snackens, white bread, shortbread cookie, 2 packages cheez its crackers, BBQ beef, sliced pepperoni, hot Italian sausage, 2 Texas Beef Ramen soup, 2 sharp cheddar cheese squeez, mild pickle, mackeral, spicy fishsticks, 1 ice cream sandwich. This is the only commissary slip which the undersigned can locate in the volumes oof exhibits, and this one was supplied by Plaintikff as an attachment to his complaint.

7.[9] Moreover, given the requirements of the Chronic Care Clinic with respect to diabetics, including referral to a provider or dietician[10] for evaluation and recommendation of the appropriate diet; education about appropriate dietary choices and monitoring; as well as monitoring by the provider or nurse of commissary purchases and possible medical limitations on commissary purchases, etc., and Defendants have failed to establish that Tristan Tenney, as the Health Service Administrator, was not responsible for these tasks, there is a genuine issue whether he was deliberately indifferent to Plaintiff's serious medical condition.

Finally, the undersigned acknowledges that on February 22, 2011, the Plaintiff filed a similar action in West Virginia state court (hereinafter the "2011 action"). ECF No. 61-2 at 1. Among others, the 2011 action named Tristian Tenny and David Proctor as defendants. Id. The 2011 action alleged that Plaintiff was subject to cruel and unusual punishment because of the defendants' deliberate indifference to Plaintiff's serious medical needs. Id. On July 25, 2011, in a two-page opinion, West Virginia state court Judge Wilfong stated:

> The Court is of the opinion that it simply seems that the Petitioner disagrees with the HCC treating physician as to his course of treatment. The conditions, as they existed, were not and are not at this time the basis for a cruel and unusual punishment claim under the Constitution of the United States or the State of West Virginia.

Id. at 2.

---

[9] More specifically, Plaintiff alleges that items that he has been told not to purchase or eat are included on the renal diet, including in a seven days period, 28 apple jellies (two at lunch for a fruit substitute), 42 slices of white bread, 14 apples and, each and every day, pasta and rice. ECF No. 138-1 at 40.

[10] On May 12, 2015, as part of the grievance process, Debbie Hisson, RN, BSN, Directtor of Inmate Health Services, advised Plaintiff to speak with the dietician onsite so that he could be better equipped to manage his condition. ECF No. 29-1 at 2. However, Plaintiff alleges there is no dietician on site. ECF No. 138 at 6.

Defendants argue that the Plaintiff's 2011 state court action bars him from bringing the current action. Indeed, "judgment dismissing the previous suit 'with prejudice' bars a later suit on the same cause of action." <u>Lawlor v. Nat'l Screen Serv. Corp</u>., 349 U.S. 322, 327 (1955).

Here, the complained of conduct is substantially similar in both actions and both involve Defendant Proctor and Defendant Tenney. However, simply that "both suits involved 'essentially the same course of wrongful conduct' is not decisive" <u>Id</u>. "While the [first] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." <u>Id.</u> at 328.

Both actions involve the care the Plaintiff received for his diabetes and the same defendants. Thus, any complained of conduct in the current action that occurred before July 25, 2011—the date the first judgment was entered—may be barred by claim preclusion and is most certainly barred by the statute of limitations. However, it is critical to note that the record from that proceeding does not establish what evidence was considered by Judge Wilfong, and it seems certain that he did not have available the guidelines for the Diabetic Chronic Care Clinic. Accordingly, the undersigned concludes that the instant complaint is not barred by claim preclusion.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that Defendants' Motion for Summary Judgment [ECF No. 132] be **DENIED**, and this matter proceed pursuant to the previously entered amended scheduling order.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections

17

identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means. Upon entry of this Report and Recommendation, the Clerk is further **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: April 23, 2018.

*/s James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE