IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOUGLAS ANDREW REDLESKI,**

    **Plaintiff,**

**v.**                     **//**        **CIVIL ACTION NO. 1:15CV89**
                                          **(Judge Keeley)**

**DAVID PROCTOR**
**and TRISTAN TENNEY,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND**
**REJECTING PART REPORT AND RECOMMENDATION [DKT. NO. 144]**

## I. PROCEDURAL BACKGROUND

On May 21, 2015, the pro se plaintiff, Douglas Andrew Redleski ("Redleski"), filed a state civil rights complaint pursuant to 42 U.S.C. § 1983, naming as defendants the following individuals: Warden Marvin C. Plumley ("Plumley"); Debbie Hissom, RN, BSM ("Hissom"); David Proctor, Practicing Physician ("Dr. Proctor"); and Tristen Tenney, RN, HSA ("Tenney") (Dkt. No. 1). Redleski contends that the defendants denied him proper medical care for his diabetes, in violation of the Eighth Amendment, during his time at Huttonsville Correctional Center ("HCC") (Dkt. No. 1).

Redleski alleges particularly that the defendants, among other things, failed to order him a diabetic diet or necessary snacks, test his glucose levels at the appropriate time and frequency, consult him before changing his insulin levels, or provide him with education or a dietician to assist with managing his diet. Id. at 8-17. He claims that this treatment demonstrates a "likelihood of

future injury," and seeks $1,000 per day and injunctive relief regarding future care. Id. at 18.

Pursuant to 28 U.S.C. § 636 and LR PL P 2, the Court referred the case to the Honorable Michael J. Aloi, United States Magistrate Judge, for initial screening and a Report and Recommendation ("R&R"). Thereafter, Plumley and Hissom moved to dismiss for failure to state a claim (Dkt. No. 25), and Dr. Proctor and Tenney moved to dismiss for insufficient service (Dkt. No. 30). After receiving an R&R on the motions from Magistrate Judge Aloi (Dkt. No. 52), the Court granted Plumley and Hissom's motion to dismiss, but converted Dr. Proctor and Tenney's motion to dismiss to a motion to quash and granted it (Dkt. No. 54).

Dr. Proctor and Tenney then waived service (Dkt. Nos. 58; 59), and, on May 9, 2016, filed a motion to dismiss for failure to state a claim (Dkt. No. 61). In support, the defendants argued that Redleski has already "had his day in [c]ourt" because he adjudicated a related petition for habeas corpus in the Circuit Court of Randolph County, West Virginia (Dkt. No. 62 at 2). They further argued that Tenney should be dismissed for lack of personal involvement, and that Redleski's complaint generally fails to state a claim for deliberate indifference. Id. at 3-10.

**REDLESKI V. PROCTOR, ET AL.**                                   **1:15CV89**

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING PART REPORT AND RECOMMENDATION [DKT. NO. 144]**

On February 14, 2017, Magistrate Judge Aloi entered an R&R recommending that the Court deny Dr. Proctor and Tenney's motion to dismiss (Dkt. No. 72). He concluded that much of the complained of conduct occurred after Redleski's state court action and is not precluded by Redleski's prior habeas proceeding. Id. at 10. In addition, Magistrate Judge Aloi reasoned that Redleski's complaint stated a claim for deliberate indifference against both Dr. Proctor and Tenney. Id. at 14. Because no party objected, the Court adopted the R&R on March 6, 2017, and recommitted the case to Magistrate Judge Aloi for entry of a schedule (Dkt. No. 75). Thereafter, the case referral was reassigned to the Honorable James E. Seibert, United States Magistrate Judge.

Now pending is the motion for summary judgment filed by Dr. Proctor and Tenney (Dkt. No. 132). On April 23, 2018, Magistrate Judge Seibert recommended that the Court deny the defendants' motion (Dkt. No. 144), concluding that disputes of material fact preclude summary judgment as to whether either Dr. Proctor or Tenney was deliberately indifferent. Id. at 15-16. Dr. Proctor and Tenney objected to this recommendation, contending, among others, that Tenney "was not responsible for the plaintiff's medical care and had no authority to make decisions regarding the plaintiff's

treatment" (Dkt. No. 153 at 2). The defendants also renewed their "argument that claims arising prior to May 27, 2013, are barred by the statute of limitations." Id.

## II. STANDARD OF REVIEW

When considering a magistrate judge's R&R made pursuant to 28 U.S.C. § 636(b)(1), the Court must review de novo those portions to which objection is timely made. Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W.Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

## III. DISCUSSION

### A.   Deliberate Indifference

Redleski's remaining claims in this case center on his allegation that Dr. Proctor and Tenney were deliberately indifferent to his diabetes mellitus. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the context of medical treatment, such

4

punishment occurs when a prison official exhibits "deliberate indifference to serious medical needs of [a] prisoner[]." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A deliberate indifference claim consists of two components, objective and subjective." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

### 1. The Objective Prong

Under the first prong, an inmate must complain of a deprivation "sufficiently serious" to be deemed "extreme" because it poses "a serious or significant physical or emotional injury resulting from the challenged conditions" or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In medical needs cases, "[o]bjectively, the inmate's medical condition must be 'serious' - 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Jackson, 775 F.3d at 178 (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

The defendants do not dispute that Redleski's diabetes is a serious medical need (Dkt. No. 133 at 16), nor could they. Scinto v. Stansberry, 841 F.3d 219, 228 (4th Cir. 2016). Moreover, the

5

defendants admit that Redleski's average blood glucose levels were higher than normal while he was being treated by Dr. Proctor (Dkt. No. 132-1 at 2-3). Viewing these facts in the light most favorable to Redleski, there is a genuine dispute of material fact as to whether elevated glucose levels are themselves a serious injury or create a substantial risk of such injury. See Scinto, 841 F.3d at 228-29. Therefore, for the purpose of the defendants' motion for summary judgment, Redleski has satisfied the objective prong.

**2. The Subjective Prong**

The second prong requires a plaintiff to prove that an official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson, 775 F.3d at 178. In other words, "the plaintiff must show that the official was 'aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and . . . dr[ew] th[at] inference.'" Scinto, 841 F.3d at 225 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)) (alteration and emphasis in original). "Under this standard, mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent

6

**REDLESKI V. PROCTOR, ET AL.**                                  **1:15CV89**

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING PART REPORT AND RECOMMENDATION [DKT. NO. 144]**

exceptional circumstances." Id. (quoting Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)).

The subjective requirement can be met "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. at 226 (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)). In addition,

> [a] plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." However, even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk."

Id. (alterations in original) (internal citation omitted).

   a.   **Dr. Proctor**

The defendants did not object to the conclusion in the R&R that disputes of material fact preclude summary judgment regarding Dr. Proctor's liability (Dkt. No. 144 at 15-16). Having reviewed

7

the record, the Court finds no clear error in Magistrate Judge Aloi's conclusion. Diamond, 416 F.3d at 315.

As Redleski's treating physician, there is no dispute that Dr. Proctor was aware of Redleski's diabetic condition. The medical records filed in this case indicate that Redleski's condition was "longstanding, pervasive, well-documented, and expressly noted" by Dr. Proctor. Scinto, 841 F.3d at 226, 229. Despite knowing that his glucose levels were poorly controlled, Redleski contends that Dr. Proctor failed to see him monthly, to counsel him regarding diet, and to monitor his commissary purchases as required by his own Chronic Care Clinic guidelines. Moreover, Redleski contends that the defendants denied him insulin by failing to provide the appropriate amount and type of insulin to cover every 24 hour period (Dkt. No. 138 at 6).[1] These allegations support a reasonable inference that Dr. Proctor was deliberately indifferent to Redleski's serious medical need, and that he responded unreasonably to associated risks. Scinto, 841 F.3d at 229.

---

[1] "There is no requirement . . . that a plaintiff alleging deliberate indifference present expert testimony to support his allegations of serious injury or substantial risk of serious injury. Rather, the Federal Rules of Evidence apply . . . ." Scinto, 841 F.3d at 230.

### b. RN Tenney

The defendants contend that Tenney cannot be liable for deliberate indifference because he "was not responsible for the plaintiff's medical care and had no authority to make decisions regarding the plaintiff's treatment," including the provision of insulin (Dkt. No. 153 at 2). As Magistrate Judge Aloi's reasoning makes clear, however, there are disputes of material fact regarding whether Tenney was deliberately indifferent.

Significantly, prison officials may be deliberately indifferent if they fail to provide a proper diabetic diet. In <u>Scinto v. Stansberry</u>, the diabetic plaintiff alleged that he was served "meals high in sugar and accompanied by a sugary drink" while in the special housing unit. 841 F.3d at 232. Although the Fourth Circuit acknowledged that the duty to provide inmates with adequate food "includes an obligation to provide a medically appropriate diet when necessary," it found the plaintiff's allegations insufficient to survive summary judgment:

> Plaintiff has not offered evidence that there was no combination of foods in each meal that would have provided him with adequate sustenance without causing adverse medical consequences, instead asserting only that the meals were high in sugar and accompanied by a sugary drink. Plaintiff also does not contradict prison officials' claims that he was educated on how to eat the

9

> available meals . . . in a way that would not exacerbate his diabetic condition.

Id. at 234.

Here, grievances directed to Tenney from Redleski regarding Dr. Proctor's medical care establish that Tenney knew of both Redleski's diabetes and his need for a special diet (Dkt. No. 138-1 at 20). Redleski claims that, although the defendants at times ordered a "Diabetic 2800 Calories" diet, they failed to educate him regarding an appropriate diet (Dkt. No. 138 at 5-6). In fact, when Redleski asked for more information on when he had been educated "on how to eat as a diabetic should," Tenney responded, "[s]urely you're not implying that after years and years of being a diabetic you don't know what to eat" (Dkt. No. 138-1 at 20).[2] As outlined in the R&R, the defendants have not offered any evidence regarding who was responsible for providing such education (Dkt. No. 144 at 16). Therefore, there are disputes of material fact regarding whether Tenney failed to provide Redleski with "instruction on how to eat the available meals." Scinto, 841 F.3d at 234.

---

[2] Elsewhere, Tenney instructs Redleski that Dr. Proctor has documented diet counseling with Redleski in chronic care clinic for years (Dkt. No. 1-2 at 45).

**B.   The Statute of Limitations and Preclusion**

The defendants also object that the R&R does not address their "argument that claims arising prior to May 27, 2013, are barred by the statute of limitations" (Dkt. No. 153 at 2). Although the defendants' reliance on the statute of limitations is misguided, some of Redleski's claims are precluded.

Section 1983 provides a federal cause of action, but it looks to state law to establish the statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). Under West Virginia Code § 55-2-12, the period to bring a claim for personal injury is two years. "The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination." A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (internal quotation omitted). This occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

In addition, "when a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." DePaola v. Clark, 884 F.3d 481, 486 (4th Cir. 2018). "[A] prisoner may allege a continuing violation under Section 1983 by identifying a series of acts or omissions that demonstrate deliberate indifference to a serious, ongoing medical need." Id. at 487. In such a case, the statute of limitations does not begin to run until the plaintiff is provided adequate treatment, and the claim may "extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." Id. "Accordingly, to assert a Section 1983 claim for deliberate indifference under the 'continuing violation' doctrine, a plaintiff must (1) identify a series of acts or omissions that demonstrate deliberate indifference to his serious medical need(s); and (2) place one or more of these acts or omissions within the applicable statute of limitations for personal injury." Id.

Here, Redleski's allegations satisfy the continuing violation doctrine, as he claims that the defendants have engaged in the same indifferent conduct since his arrival at HCC in 2009 (Dkt. No. 138

at 5). Medical records in this case establish that Redleski's glucose levels have been high during most of his time at HCC, including the two-year statutory period beginning in 2013 (Dkt. No. 140-1). Because Redleski has raised disputes of material fact regarding whether the defendants were deliberately indifferent to his diabetes, and, in particular, to his high glucose levels, during that time, the statute of limitations will "extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act." Depaola, 884 F.3d at 487.

Nonetheless, the defendants have also argued that Redleski's claims are barred by res judicata or collateral estoppel (Dkt. Nos. 6 at 1-3; 133 at 20-21). On February 22, 2011, Redleski filed a petition for writ of habeas corpus in the Circuit Court of Randolph County, West Virginia, alleging that Dr. Proctor and Tenney had been deliberately indifferent to his serious medical needs during his tenure at HCC (Dkt. No. 61-2 at 2). He claimed that "[t]his lack of treatment include[d] but [was] not limited to; properly prescribed and adjustments of insulin amounts, proper diabetic diet, and proper follow-up after diabetic hemoglobin A1C tests are done, along with adjustments of insulin and diet" (Dkt. No. 61-1 at

13

5). After reviewing the records of Redleski's blood sugar tests and insulin injections, the state court concluded that he merely disagreed with his course of treatment and had been adequately treated (Dkt. No. 61-2 at 2).

Because the defendants rely on a decision issued by a West Virginia court, the Court must apply West Virginia's "legal principles concerning res judicata." Brooks v. Arthur, 626 F.3d 194, 200 (4th Cir. 2010) (Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)). In West Virginia, a claim is barred by res judicata if three elements are satisfied:

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 4, Blake v. Charleston Area Med. Ctr., Inc., 498 S.E.2d 41 (W. Va. 1997). "'[A] cause of action' is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief." Id. at 48 (quoting White v. SWCC, 262 S.E.2d 752, 756 (W. Va. 1980)). "[R]es judicata may operate to bar a subsequent proceeding even if the precise cause of action involved was not actually litigated in the former

14

proceeding so long as the claim could have been raised and determined." Id. at 49.

In this regard, "it is imperative that the party bringing the subsequent lawsuit was, during the prior action, able to foresee the consequences of his/her failure to raise the subsequently raised issue in the prior action." Id. West Virginia uses the "same-evidence" approach to assess whether two claims are identical under res judicata. "The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues." Syl. Pt. 4, Slider v. State Farm Mut. Auto. Ins. Co., 557 S.E.2d 883 (W. Va. 2001) (distinguishing the "transaction-focused test" of the *Restatement (Second) of Judgments*).

"[T]he facts which establish or give rise to [Redleski's] right of action" are the same in this case as they were in his state case. Blake, 498 S.E.2d at 48. Both cases involve the defendants' alleged failure to monitor and adjust Redleski's insulin treatment and diabetic diet. Simply put, "the same evidence would support both actions." Slider, 557 S.E.2d 883, Syl. Pt. 4. Therefore, res judicata bars Redleski's claims that arise prior to entry of judgment in the state court action on July 25, 2011.

15

Nonetheless, contrary to the defendants' arguments, collateral estoppel does not bar the entirety of Redleski's claim. Unlike res judicata, which focuses on causes of action, "[c]ollateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Conley, 301 S.E.2d 216, Syl. Pt. 2. Collateral estoppel applies if four conditions are met:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, State v. Miller, 459 S.E.2d 114 (W. Va. 1995).

Although the defendants contend "that the issues raised by Mr. Redleski in his 2011 filing are exactly the same as the issues in the case at bar" (Dkt. No. 133 at 20), there can be no doubt that the state court's decision did not address Redleski's claims concerning conduct that took place from 2011 to the present. Issues cannot be identical for purposes of collateral estoppel when "the second action involves different facts." Holloman v. Nationwide Mut. Ins. Co., 617 S.E.2d 816, 821 (W. Va. 2005) (discussing Miller, 459 S.E.2d 114). Therefore, because this case involves

**REDLESKI V. PROCTOR, ET AL.**                                   1:15CV89

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING PART REPORT AND RECOMMENDATION [DKT. NO. 144]**

different facts, collateral estoppel does not bar litigation of issues arising after the state court decision in 2011.

### IV. CONCLUSION

For the reasons discussed, the Court:

1) **ADOPTS in part** and **REJECTS in part** the R&R (Dkt. No. 144);

2) **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Dkt. No. 132); and

3) **DISMISSES WITH PREJUDICE** Redleski's claims arising prior to July 25, 2011.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to the pro se plaintiff, certified mail and return receipt requested.

Dated: June 13, 2018.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE